IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| In re | Chapter 11 |
|---|---|
| LOGAN T. JOHNSTON, III, | Case No. 2:01-bk-06221-SSC |
| Debtor. | |
| LOGAN T. JOHNSTON, III, | Adv. No. 2:08-ap-00290-SSC |
| Plaintiff, | (For Electronic Docketing Only; Not For Publication) |
| v. | |
| UNITED STATES OF AMERICA, INTERNAL REVENUE SERVICE | **MEMORANDUM DECISION RE VIOLATION OF THE DISCHARGE INJUNCTION AND THE JURISDICTION OF THIS COURT TO AWARD ATTORNEYS' FEES AND COSTS** |
| Defendant. | |

I. INTRODUCTION

On September 2 and December 16, 2009, this Court conducted hearings in this adversary proceeding to determine whether the United States had willfully violated the discharge injunction and to what extent, as a matter of law, the Ellett Law Offices, P.C. ("Firm"), attorneys for Logan T. Johnston III, could recover their fees and any costs concerning the pursuit of whether the Internal Revenue Service ("IRS"), as an agency of the United States, had violated

1

the discharge injunction of the Debtor.

The issues of whether the United States has willfully violated the discharge injunction and whether Debtor's counsel is entitled to attorneys' fees and costs, in prosecution of this adversary, have arisen as the second part of multiple issues that have been presented in this adversary proceeding. On April 17, 2008, the Debtor filed a Complaint, which was amended on April 21, 2008, alleging that the IRS had willfully violated the Debtor's discharge injunction granted under 11 U.S.C. §524. Subsequently this Court determined that the Debtor's claim was against the United States, since the IRS is simply an agency thereof. The parties filed a Stipulation of Facts on February 13, 2009, and Cross Motions for Summary Judgment on February 17, 2009. After oral argument and additional memoranda of law, this Court rendered its Memorandum Decision, dated July 30, 2009,[1] in which it held that (1) to the extent the United States had a defense of sovereign immunity, it was waived,[2] (2) the Debtor's confirmed plan, as amended ("Plan"), was clear as to the treatment of the "gap" interest of the IRS,[3] (3) the Debtor's disclosure statement was not incorporated into the Debtor's Plan, and (4) the gap interest of the IRS was discharged pursuant to the Debtor's Plan.

The Court had anticipated that some type of evidentiary hearing would be necessary to resolve the remaining issues in the adversary. However, the Debtor filed instead a Second Motion for Partial Summary Judgment, believing that the Stipulated Facts created a basis

---

[1] Docket Entry No. 30.

[2] The Court concluded that sovereign immunity had been waived for multiple reasons in this adversary. First, the issue was not raised by the United States in its Answer; second, at initial hearings in this adversary, the United States did not raise the issue; and finally, the United States filed a proof of claim in the Debtor's case. *See* Memorandum Decision of July 30, 2009 at 5, lines 14-30.

[3] "Gap" interest, for purposes of the Memorandum Decision, related to the interest which continued to accrue on the nondischargeable debt, due and owing by the Debtor to the IRS, between the date that the Debtor filed his petition and the date upon which the Debtor's Plan was confirmed.

2

for additional relief. The United States opposed the Motion and filed a Cross Motion. As a part of these Motions, the Debtor also filed a Motion to Strike the United States' Second Cross Motion for Summary Judgment, and the United States filed a response thereto opposing the Debtor's Motion to Strike. After this Court conducted argument on these Motions, the United States filed a motion requesting leave to file amended opposition to the Debtor's Motion to Strike.[4] The Court will consider the amended opposition in ruling on the issues before it. The parties having no further memoranda to submit, this Court has deemed this matter under advisement.

The Court has set forth below its decision of the issues currently before it. The Court has jurisdiction over this matter, and this is a core proceeding. 28 U.S.C. §§1334(a), (e) and 157(b)(1),(b)(2)(A),(b)(2)(I),(b)(2)(L), and (b)(2)(O)(West 2009). To the extent necessary, the Court has set forth its findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## II. FACTUAL BACKGROUND

On May 14, 2001, the Debtor filed his Chapter 11 petition with the Court. The IRS received notice of the filing of the Debtor's bankruptcy petition. On June 5, 2001, the IRS filed a proof of claim in the Debtor's case, and on April 2, 2002, the IRS filed an amended proof of claim for income taxes owed by the Debtor. The IRS had a priority claim in the amount of $83,823.10. *See* 11 U.S.C. §507(a)(8). The total debt due and owing to the IRS, including the priority amount, was $125,957.00. On January 16, 2002, the Debtor filed his Plan, which was amended on February 1, 2002. On February 27, 2002, the Court entered an order approving the disclosure statement concerning the Debtor's Plan. The IRS received notice of this Order. The IRS did not file an objection to the Debtor's Plan. On March 30, 2005, after incorporating modifications not material to the issues presented herein, the Court confirmed the Debtor's Plan

---

[4] Docket Entry No. 49.

3

by Order Incorporating Memorandum Decision ("Confirmation Order"). The Debtor provided notice to the IRS of the Confirmation Order on March 31, 2005. The IRS did not appeal the Confirmation Order. The Debtor made the requisite payments, as outlined in his Plan, including the payment of the IRS priority tax debt. Beginning shortly after April 30, 2006, the IRS commenced sending collection letters to the Debtor, including several notices of "intent to levy assets."[5] The IRS was seeking to collect the gap interest which had accrued on its priority debt from the commencement of the Debtor's case until the Debtor confirmed his Plan, and which had not been paid by the Debtor.[6]

Although not presented in the Stipulated Facts of the parties, and irrespective of the various notices sent to the Debtor concerning a levy of the Debtors' assets, the Court has been presented with no actual, direct economic damages incurred by the Debtor other than the attorneys' fees and costs of the Debtor's Firm.[7] It also appears that after this Court entered its Memorandum Decision, dated July 30, 2009, the Debtor filed an administrative claim with the IRS. Although unclear, either the IRS or the United States filed an immediate stay concerning the Debtor's claim. As a result, no decision has been rendered on the Debtor's administrative claim with the IRS. The United States does not deny that a stay has been imposed on the Debtor's claim with the IRS; it simply believes the stay is irrelevant to the issues before this Court.

### III. ISSUES PRESENTED

A. Whether the United States violated the discharge injunction.

---

[5] *See* Docket Entry No. 19, Stipulated Facts of the parties, ¶M. The United States notes that the IRS mailed four separate notices of "Final Notice of Intent to Levy," to the Debtor. *See* United States' Opposition to Plaintiff's Second Motion for Partial Summary Judgment and Cross Motion for Summary Judgment, Memorandum of Points and Authorities, Docket Entry No. 42, at p.2, lines 21-22, and p.3, lines 1-2.

[6] *See* Docket Entry No. 19, Stipulated Facts of the parties.

[7] For instance, the Court knows of no garnishment proceedings commenced by the IRS whereby it acquired any of the Debtor's wages, partnership draws, or similar compensation.

4

B. If the answer to Issue A is in the affirmative, whether the Debtor may, as a matter of law, pursue a request for attorneys' fee and costs with this Court.

IV. DISCUSSION

A. <u>Violation of the Discharge Injunction</u>.

The United States does not focus on the Debtor's assertion that the United States violated the Debtor's discharge injunction.[8] Therefore, the Court shall review the facts presented and the arguments of the Debtor.

In analyzing the matter, the Court has reviewed 11 U.S.C. §524 (West 2009), which states, in pertinent part,

> A discharge in a case under this title----
> (2) operates as an injunction against the . . .
> employment of process, or an act, to collect, recover
> or offset any such debt as a personal liability of
> the debtor. . .

The facts herein clearly reflect that the IRS, as an agency of the United States, issued notices of levy in an effort to collect gap interest that the IRS still believed was due and owing on its priority debt which had been already paid by the Debtor.

In the decision of <u>Hardy v. United States</u>, 97 F.3d 1384 (11th Cir. 1996), the IRS sought to collect a pre-petition discharged tax liability in violation of the discharge injunction.[9]

---

[8] The United States continues to assert that it did not violate the discharge injunction because the gap interest was not discharged. The reiteration of this argument, already considered by this Court in its July 30, 2009 Memorandum Decision, precipitated the Debtor's Motion to Strike.

[9] The Circuit Court concluded that under Section 105 of the Bankruptcy Code, the ability to "issue any order, process, or judgment that [was] necessary or appropriate to carry out the provisions of [the Bankruptcy Code]" created "a statutory contempt power, distinct from the court's inherent contempt powers in bankruptcy proceedings." <u>Id.</u> at 1389. As will be discussed, hereinafter, Section 105 is no longer applicable to a violation of the discharge injunction.

5

Adopting the two-part test concerning the automatic stay, the Eleventh Circuit stated that in determining whether there had been a willful violation of the discharge injunction, a court should consider (1) whether the defendant knew that the injunction had been invoked, and (2) whether the defendant intended the actions which violated the injunction.[10] The subjective beliefs or intent of the defendant should not be the focus of the court's inquiry; rather, the court should consider whether the "conduct complied with the order at issue."[11] The Ninth Circuit applies the same test. Havelock v. Taxel (In re Pace), 67 F.3d 187, 193 (9th Cir. 1995).

        The United States provides no controverting facts in this matter. Relying on the Stipulated Facts, this Court concludes that the United States, through its agency, the IRS, received notice of the Debtor's discharge in bankruptcy, and was, thus, aware of the discharge injunction. The Court also concludes that the United States intended to issue the notices of levy to collect the gap interest on the Debtor's priority tax obligation. The actions of the United States, through the IRS, to collect the gap interest were willful violations of the Debtor's discharge injunction.

        B. <u>Whether the Debtor may pursue his request for attorneys' fees and costs with this Court</u>.

        The United States raises a separate issue of sovereign immunity as to the ability of this Court to hear and determine the amount of attorneys' fees and costs to which the Debtor may be entitled to recover as a result of the United States' willful violation of the discharge injunction. Although the Debtor filed a separate Motion to Strike the Second Motion for Summary Judgment of the United States, the Court concludes that the argument on the issue of attorneys' fees and costs is predicated on a number of different statutory provisions that were not previously considered by the Court. Therefore, the Court denies the Debtor's Motion to Strike

---

[10] 97 F.3d at 1390.

[11] Id.

and will consider the arguments of the United States on the merits.

The United States relies on 26 U.S.C. §7430(a)(West 2009) in support of its argument that sovereign immunity has not been waived as to the ability of the Debtor to recover attorneys' fees and costs. The relevant part of the Section states that the United States waives sovereign immunity "[i]n any . . .court proceeding which is brought . . .against the United States in connection with the . . .collection of any tax, interest, or penalty." To be awarded a judgment, the party seeking an award must show that it was "the prevailing party" and that the judgment is for "reasonable litigation costs incurred in connection with such court proceeding." Id. at (a) and (a)(2). Section 7430( c)(1) defines "reasonable litigation costs" as being "reasonable court costs." and "reasonable fees paid or incurred for the services of attorneys."[12] 26 U.S.C. §7430 ( c)(1)(A) and (B)(iii)(West 2009).

The United States argues, however, that a party may not seek an award unless it has exhausted certain administrative remedies. Section 7430(b)(1) provides, for instance, that "[a] judgment for reasonable litigation costs shall not be awarded under subsection (a) [of Section 7430] in any court proceeding unless the court determines that the prevailing party has exhausted the administrative remedies available to such party within the Internal Revenue Service." Because the Debtor has not exhausted such administrative remedies, the United States argues that this Court does not have the subject matter jurisdiction to hear this matter. Without thoroughly discussing the issue, the Eleventh Circuit, in the Hardy decision, remands the issue of attorneys' fees to the lower courts, and states that any award for a violation of the discharge injunction should be consistent, inter alia, with Section 7430. The United States also relies on Kuhl v. United States, 467 F.3d 145, 147 (2d Cir. 2006) for the same proposition, although the Kuhl decision is not detailed in its analysis as to the application of Section 7430.

The problem, as the Debtor points out, is that there are other provisions of Federal

---

[12] The Section also provides that unless the court determines "special factors," the attorney shall not receive a fee in excess of $125 per hour. Section 7430(c)(1)(B)(iii).

7

law that do not necessarily require the exhaustion of administrative remedies when the United States, through its agency the IRS, violates the discharge injunction.

11 U.S.C. §106(a) provides that sovereign immunity is abrogated as to a "governmental unit" with respect to "(1) Sections 105. . . .524..." of title 11. Section 101(27) defines "governmental unit" as, without limitation, the United States, as well as an "agency" of the United States. 11 U.S.C. §101(27)(West 2009). Section 106 further provides that the bankruptcy court may "hear and determine any issue" concerning the application of Sections 105 or 524 to the "governmental unit" and that the bankruptcy court may enter an order or judgment awarding a "monetary recovery." 11 U.S.C. §106(a)(2) and (3). Section 106(a)(3) also states that

> Such order or judgment for costs or fees under [title 11] or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

Section 2412 of Title 28 serves as a limitation on the attorneys' fees and costs that may be recovered by the prevailing party in any civil action brought against the United States or any of its agencies. 28 U.S.C. §§2412(a), (b), and (d)(2)(West 2009). Thus, Section 2412 serves as a limitation on the amount of any award that may be entered by the bankruptcy court for a violation of Sections 105 and 524, but it is not a prohibition against the bankruptcy court hearing the matter.

Moreover, in 1998, a specific provision was added to the Internal Revenue Code which considered how an individual should proceed in the context of obtaining a civil damage award for a violation by the IRS of Section 524, the discharge injunction.[13] 26 U.S.C. §7433(e)(West 2009) states, concerning actions in violation of "certain bankruptcy procedures" that

> If, in connection with any collection of Federal tax

---

[13] This Section was added as a result of repeated violations of the discharge injunction by the IRS.

8

> with respect to a taxpayer, any officer or employee
> of the Internal Revenue Service willfully violates any
> provisions of section .. .524 (relating to the effect
> of discharge) of title 11, . . .such taxpayer may petition
> the bankruptcy court to recover damages against the
> United States.

Of importance in trying to reconcile these various provisions is the fact that most of the cases, such as In re Hardy, were decided prior to the amendment in 1998 of the Internal Revenue Code, which added Subsection (e). Thus, the United States' current reliance on case law prior to 1998 is inapposite. This Court assumes, as it should, that Congress acted intentionally when it amended Section 7433. DeVargas v. Mason & Hanger-Silas Mason Co., Inc., 911 F.2d 1377, 1388 (10th Cir. 1990) (Congress amends laws to comport with its intentions.) Section 7433(e) provides that the bankruptcy court "may hear" an action by a debtor/taxpayer with respect to any officer or employee of the IRS who willfully violates the discharge injunction under Section 524 of the Bankruptcy Code. Thus, Section 106 appears to provide this Court with the subject matter jurisdiction to hear and determine whether the Debtor's Firm should recover its attorneys' fees and costs.

Section 7433(e)(2)(A) also states that notwithstanding Section 105 of title 11, the petition to the bankruptcy court under Section 7433(e) shall be the "exclusive remedy" for recovering damages resulting from a violation of the discharge injunction. 26 U.S.C. §7433(e)(2)(A)(West 2009). Since it is the exclusive remedy, Section 7430 of the Internal Revenue Code which focuses on awarding costs and attorneys' fees in a "court proceeding" may be limited in its application to other proceedings or actions that may be brought by a taxpayer in a federal court or to those type of actions which are subsumed within Section 7433(e)(2)(B)(i). As described more fully hereinafter, the facts of this case suggest that Section 7430 is not applicable to the issues before this Court.

The Court also concludes that because of the exclusive remedy language of Section 7433(e)(2)(A), Section 7433(d), which purports to require that no judgment for damages

9

may be obtained in any court for unauthorized collection actions by the IRS against a taxpayer unless the debtor/taxpayer has exhausted his or her administrative remedies, does not apply to a debtor seeking relief under Section 7433(e)(2)(A). In fact, Section 7433(d) states that the limitation on the taxpayer's ability to proceed in court until he or she has exhausted the IRS' administrative remedies only pertains to "subsection (b)." In turn, Subsection (b) only pertains to an action which is brought under Section 7433(a). Finally, Section 7433(a) is only a general provision which relates to an officer or employee of the IRS who "recklessly or intentionally, or by reason of negligence" disregards any provision of, or regulation promulgated under, the Internal Revenue Code.[14] As already discussed with respect to Section 7430 of the Internal Revenue Code, if Congress has created a specific provision which focuses on actions that a debtor/taxpayer may take, that specific provision shall control over the general provisions. Thus, the specific provision of 26 U.S.C. §7433(e)(2)(A) must control over the general provision of Section 7433(a).

        Finally, Section 7433(e)(2)(B) states that the exclusive remedy provided under Subsection(e)(2)(A) need not apply to an action under section 362(h) concerning a violation of the automatic stay.[15] Apparently Congress determined that at least as to an individual debtor, there should be additional basis to claim relief. However, if the individual decides to pursue other actions against the IRS, Subsection (e)(2)(B)(1) requires that the attorneys' fees and costs only be awarded under Section 7430 of the Internal Revenue Code, which necessitates

---

[14] The reference in Section 7433(a) is to improper actions by an IRS officer or employee "under this title." Since the Section was enacted under title 26, the reference is to the Internal Revenue Code.

[15] It does not appear that the Internal Revenue Code has been amended to incorporate the 2005 amendments to the Bankruptcy Code. Section 362(h), pertaining to the ability of an individual to pursue a willful violation of the automatic stay, has been re-designated Section 362(k)(1) as a result of the changes enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

exhaustion of administrative remedies.[16]

The IRS does cite this Court to the decision of Kuhl v. United States, 467 F.3d 145 (2d Cir. 2006), which was decided after the insertion of Subsection (e) into §7433 of the Internal Revenue Code. The facts of that case reflect that on February 10, 2000, the debtor filed her chapter 7 bankruptcy petition, and in May 2000, received her discharge. Id. at 146. On February 27, 2003, the IRS, by notice of levy, commenced garnishment of the debtor's wages to satisfy allegedly outstanding tax liabilities. Id. The debtor protested the actions of the IRS, and ultimately, in the fall of 2004, the bankruptcy court discharged any remaining tax liability. Id. at 146-147. However, the bankruptcy court denied her request for sanctions. On appeal, the Second Circuit considered to what extent to the debtor could pursue her claim for attorneys' fees as a result of the actions of the IRS. Id. at 147. The Second Circuit stated

> Congress has conditionally waived sovereign immunity for the IRS' willful violation of such a discharge: after exhausting administrative remedies, the taxpayer may petition the bankruptcy court for damages.

Id. at 147. The Second Circuit cites to not only Section 7433(e) of the Internal Revenue Code, but also to an Internal Revenue Service Regulation, 26 C.F.R. §301.7433-2(b)(2)(West 2009), which should provide guidance concerning an action that is commenced under §7433(e). Id. However, the Second Circuit only cites to part of the Regulation. Referring first to Subsection (b)(2), concerning the "litigation costs and administrative costs," the Second Circuit concludes that such litigation costs are not recoverable as "actual, direct economic damages," but may be "recovered under [26 U.S.C.] section 7430." 467 F.3d at 147. However, a review of Subsection (b)(2) of the Regulation reflects that the reference to "litigation costs and administrative costs" refers back to actions concerning the violation of the automatic stay, not necessarily the

---

[16] Although not relevant to the ultimate determination of the issues presented herein, Subsection (e)(2)(B)(ii), in the phrase "certain other actions permitted," also includes the ability of a taxpayer to recover "administrative costs" from the bankruptcy court if incurred on or after the date that the bankruptcy petition has been filed. Presumably such post-petition expenses refer to administrative expenses under Section 503 of the Bankruptcy Code.

11

discharge injunction. Without discussing the issue further or discussing the specific Regulation applicable to actions under Section 7433 of the Internal Revenue Code, the Second Circuit simply turns to a discussion of Section 7430 and 26 C.F.R. §301.7430-1(West 2009), the Regulation thereunder. Id. At least as to the facts in this case, this Court disagrees with the Second Circuit's sole reliance on 26 C.F.R. §301.7430-1(West 2009).

Although not discussed in Kuhl, another Subsection of the Regulation concerning Section 7433 of the Internal Revenue Code appears more relevant to the issues before this Court. 26 C.F.R. §301.7433-2(d)(2)(West 2009) states that although an administrative claim should generally be filed first with the IRS before filing an action with the bankruptcy court, there is an exception when the "administrative claim is filed in accordance with paragraph (e) of this section during the last six months of the period of limitations described in paragraph (g) of this section...." Under such a factual predicate, the debtor need only file the administrative claim with the IRS, and then may immediately file an action with the bankruptcy court. 26 C.F.R. §301.7433-2(d)(2). In turn, Paragraph (g) states, in pertinent part:

> (1). . ..A petition for damages under paragraph (a) of this section must be filed in bankruptcy court within two years after the date the cause of action accrues.
> (2) . . ..A cause of action under paragraph (a) of this section accrues when the taxpayer has had a reasonable opportunity to discover all essential elements of a possible cause of action.

26 C.F.R. §301.7433-2(g)(West 2009). Thus, if a debtor discovers a claim concerning a violation of his or her discharge injunction, the debtor must file an action with the bankruptcy court within two years of that discovery, assuming the debtor has had "a reasonable opportunity to discover all essential elements of a possible cause of action" during that time period. In turn, if it is nearing the end of the two-year period, the debtor may file an administrative claim with the IRS, and then immediately file an action with the bankruptcy court if there is only six months left before the two-year period is about to expire.

The Debtor herein received his first notice of tax levy from the IRS shortly after

12

April 30, 2006.[17] The IRS concedes that three additional notices were sent to the Debtor. The parties have not stipulated, and there is no evidence in the record, as to when the Debtor should have had a "reasonable opportunity to discover all essential elements of a possible cause of action." Certainly the Debtor did not anticipate any claim for gap interest. The Debtor paid the IRS priority claim shortly after his Plan was confirmed in 2005. There is nothing in the record to indicate that the IRS ever asserted a gap interest claim until it commenced sending the notices to the Debtor in April of 2006. On April 17, 2008, within the two-year period after the Debtor first received his notice of levy concerning gap interest, the Debtor filed his complaint with this Court concerning a violation of his discharge injunction. Until the current opposition to the Debtor's Second Motion for Summary Judgment, the IRS has never raised the issue of the Debtor's failure to file an administrative claim first with the IRS before filing this adversary with the Bankruptcy Court as depriving this Court of subject matter jurisdiction over the matter. Until the current opposition, the IRS has also never raised the issue of the Debtor's failure to file his claim or action within the applicable statute of limitations.[18] Moreover, when the Debtor did try to file an administrative claim with the IRS after the entry of this Court's July 30, 2009 Memorandum Decision, either the IRS or the Untied States requested an immediate stay to delay the processing of the Debtor's claim. Indeed another provision of the Regulation concerning actions under Section 7433 of the Internal Revenue Code contemplates that the IRS may take no action on a claim. 26 C.F.R. §301.7433-2(d) states, in part:

> : . . .no action under paragraph (a)(1)[pertaining to a petition for damages under sections 362 or 524] . . .shall be maintained in any bankruptcy court before the earlier of the following dates–
> (i) The date the decision is rendered on a claim filed in accordance with paragraph (e) of this section; or
> (ii) The date that is six months after the date an administrative claim is filed in accordance with paragraph (e) of this section.

---

[17] *See* Stipulated Facts of the parties, ¶M, Docket Entry No. 19.

[18] *See* Docket Entry No. 9, Answer to Amended Complaint and Docket Entry No. 24, United States' Opposition to Plaintiff's Motion for Partial Summary Judgment.

13

If no action is taken after the claim has been on file for six months, the taxpayer should then be free to file an action with the bankruptcy court. Thus, given the delay, arguably the Debtor herein should be free to pursue an action with this Court.

The Court has resolved certain issues between the parties at this stage of the litigation. However, there are other factual issues which remain and must be resolved before this Court may enter a judgment for the Debtor or dismiss this Complaint. First, has the statute of limitations concerning the Debtor's ability to pursue a claim for a violation of his discharge injunction expired? As a part of its analysis, the Court should also consider whether the IRS has waived such a defense given the facts of this case. Second, if the statute of limitations has not expired, for legal or equitable reasons, has the Debtor's filing of his administrative claim with the IRS, after the filing of the Complaint with this Court, provided this Court with subject matter jurisdiction?[19] Finally, what claim for "actual, direct economic damages" has the Debtor asserted against the United States? At this time, there is nothing in the record to quantify such damages. This Court does not see a basis for the Debtor to proceed with this adversary proceeding for his attorneys' fees and costs unless he has some type of predicate claim for actual, direct economic damages.

## V. CONCLUSION

The Court concludes that the United States, through its agency, the IRS, has willfully violated the Debtor's discharge injunction. The Court, however, is unable to determine whether the Debtor may recover his attorneys' fees and costs because of factual issues that remain unresolved. The Court has outlined the remaining factual issues that may be presented to

---

[19] Although a federal court may, *sua sponte,* consider whether it has subject matter jurisdiction to hear and determine a matter, only the parties herein have the factual information to allow this Court to determine when the Debtor's action concerning a violation of the discharge injunction accrued, and when the administrative claim was filed with the IRS vis-a-vis the potential expiration of the statute of limitations..

14

the Court through a further stipulation or which must be resolved by an evidentiary hearing. The Court is also mindful that if the statute of limitations has run as to the Debtor's claim, if the Debtor did not timely file his administrative claim with the IRS, given the unique facts of this case, or if the Debtor has no actual, direct economic damages, the Court may need to rescind its determination that the IRS has willfully violated the discharge injunction. The Court will issue a separate notice, setting a further Federal Rule of Bankruptcy Procedure 7016 Scheduling Conference to determine how to resolve the remaining issues in this adversary proceeding.

Dated this 22nd day of March, 2010.

*[signature]*

The Honorable Sarah Sharer Curley
United States Bankruptcy Judge

BNC to notice.